UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

S.R.R.B., a minor, BY AND THROUGH
THOMAS O. VREELAND, as temporary guardian
of the Estate of S.R.R.B,

        Plaintiff,

        v.                        CASE NO. 8:08-CV-960-T-17MAP

LIFE INVESTORS INSURANCE COMPANY
OF AMERICA,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a minor, filed this action to recover life insurance proceeds under a policy issued to his mother after the Defendant insurer claimed his mother made misrepresentations on her insurance application and denied his claim for benefits. At this juncture, the parties have filed cross motions for summary judgment and the district judge referred the motions to me for report and recommendation. *See* Defendant's motion for summary judgment (doc. 73), Defendant's amended motion for summary judgment (doc. 117), Plaintiff's response thereto (doc. 123) and Defendant's reply (doc. 129), and Plaintiff's motion for summary judgment (doc. 74) and Defendant's response thereto (doc. 98), and Order of referral (doc. 94). After consideration, I find that there are genuine issues of material fact and recommend that the motions for summary judgment should both be DENIED.

*Background facts*

On or about September 16, 2002, Stephanie Beavers, a twenty-five year old single

mother, submitted an application to Defendant Life Investors Insurance Company of America ("Life Investors") for a life insurance policy. The application asked whether she had "used tobacco within the last 5 years," and Beavers checked "no." The application also asked whether "within the past 10 years, [she had] been treated or diagnosed by a health care professional as having any disease or disorder of the brain or nervous system (such as seizures, epilepsy, multiple sclerosis, mental illness, depression, suicide attempt, eating disorder, dementia or Alzheimer's disease)?", and Ms. Beavers checked "no." On the application Ms. Beavers certified that her answers were "true and complete to the best of my knowledge and belief." The "agent's Report" section of the application indicates that the agent, Daniel Cieri, "just met" Ms. Beavers, that if the application is approved other than as requested the policy should be "adjust[ed] to premium" and that the rate class applied for was "Preferred Elite." It is unknown whether Cieri explained these terms to Ms. Beavers, or not. On October 24, 2002, Life Investors issued a written policy of insurance #012762986 on the life of Ms. Beavers in the amount of $176,000 ("the policy"). The policy named Ms. Beavers minor son, S.R.R.B., as the beneficiary.

Ms. Beavers died as a result of intoxication by methadone, oxycodone, and cocaine on April 19, 2004. Thereafter, S.R.R.B., through his maternal grandmother, notified Life Investors of Ms. Beaver's death, and claimed death benefits. Pursuant to the policy's two year contestability provision, Life Investors began investigating the claim, obtaining Ms. Beavers' medical records from the hospital, police, and medical examiner. The records revealed that Ms. Beavers had seen a psychiatrist, and after obtaining the psychiatrist's medical records, Life Investors concluded that Ms. Beavers had treated with the psychiatrist within the ten year period preceding her application. Life Investors also claims the medical records revealed that Ms.

Beavers smoked cigarettes within five years preceding her submission of her application to Life Investors. Accordingly, Life Investors concluded that it would not have issued the Preferred Elite policy to Ms. Beavers had she properly responded to the application questions concerning cigarette use and depression, and notified Plaintiff it was unilaterally rescinding the insurance policy. Life Investors refunded to Plaintiff the premiums Ms. Beavers paid for the policy. Plaintiff filed this action against Life Investors to enforce the insurance policy.[1]

*Standard of review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

*Discussion*

The law of Florida applies to this case, as the state where the policy was issued. Under Florida law, ambiguities in insurance contracts must be resolved in favor of the insured. *LaTorre v. Connecticut Mutual Life Ins. Co.*, 38 F.3d 538, at 538, 540 (11th Cir. 1994). Under section

---

[1] Plaintiff's complaint contained another count (count II) that concerned enforcement of two other insurance policies Beavers had applied for shortly before her death, but Plaintiff voluntarily dismissed count II on April 13, 2009. *See* doc. 50, Order doc. 51.

627.409, Florida Statutes, an insurer may rescind an insurance policy on the grounds of misrepresentation if it can prove:

> (a) The misrepresentation, omission, concealment, or statement is fraudulent, or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Fla. Stat. §627.409(1)(a)-(b).

As a general rule, parties are free to "contract-out" or "contract-around" state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract. *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990). In this case, the Life Investors incorporated a "knowledge and belief" standard in its life insurance application, bypassing §627.409's rigid standard. The application instructs Ms. Beavers to sign the application certifying that the answers "are true and complete to the best of my knowledge and belief." Hence, Life Investors chose to include language in its application that effectively shifted the focus, in a determination of the truth or falsity of an applicant's statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what she knew, the applicant believed them to be true. Thus, the applicant's answer must be assessed in light of her actual knowledge and belief. *See William Penn Life Ins. Co. of New York v. Sands,* 912 F.2d 1359, 1363 (11th Cir. 1990) quoting *Skinner v. Aetna Life & Casualty*, 804 F.2d 148, 150 (D.C. Cir. 1986). Life Investor's burden on summary judgment is to demonstrate as a matter of law that there were underlying facts known to decedent which "clearly

contradicted' her answers on the application. Additionally, Life Investors must prove the materiality of such misrepresentations.

　　*a. misrepresentation*

"Like fraud cases, summary judgment is rarely proper in "knowledge and belief" cases because the issue usually "turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." *Casamassina v. United States Life Ins. Co.,* 958 So. 2d 1093, 1100 (Fla. 2007) citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003). "Conflicting inferences from the record about intent or understanding are best left for the jury and are not appropriate for summary judgment." *U.S. Life Ins. Co. In City of New York*, 958 So. 2d 1093, 1101 (Fla. 4th DCA 2007) quoting *Bruno v. Destiny Transp., Inc.*, 921 So. 2d 836 (Fla. 2d DCA 2006).

The Eleventh Circuit, interpreting a similar knowledge and belief clause, adopted a test evaluating whether an insured's responses to questions in an insurance application were given according to the best of his knowledge and belief:

> The twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief . . . What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception-persons who having witnessed the Apollo landings, still believe the moon is made of cheese.

*Sands*, *supra*, at 1365 quoting *Skinner v. Aetna Life & Casuality*, 804 F.2d 148, 151 (D.C. Cir. 1986) (finding district court erred in granting summary judgment for insurer and that district court erred in finding misstatements on application were misstatements warranting rescission

5

under Fla. Stat. § 627.409(1) and stating that on remand insurer may litigate its other bases for denying coverage, including any claim that applicants did, in fact, knowingly misstate their responses to the application questions). Similarly, in *Casamassina*, the Florida Fourth District Court of Appeals reversed the trial court's summary judgment in favor of the defendant insurance company, finding that the circumstances surrounding the plaintiff's insurance application "certainly raise questions about what he knew and when he knew it."[2] *Casamassina, supra,* at 1101. As in *Casamassina*, the circumstances surrounding Ms. Beavers' insurance application certainly raise questions about what she knew or understood about her health when she completed the application.

The record before the Court includes conflicting evidence regarding whether Ms. Beavers used tobacco during the relevant time frame. The lab tests Life Investors conducted at the time of the application showed no nicotine in her system. However, Life Investor's investigation included requesting medical treatment records from Ms. Beavers' physicians. Life Investor's review of the medical records revealed several handwritten notes indicating that Ms. Beavers had smoked: an October 10, 2001, notation by Dr. Lakdawala stating "Just stopped smoking"; a May 2001 notation in Dr. Scheinschaupt's initial patient history stating Ms. Beavers smoked and "want[ed] to stop"; a November 6, 2003, University Community Hospital record stating "smokes tobacco for 5-10 pack years. *See* Lakdawala depo, p. 12; Schweinschaupt depo, pp. 6-7; University Community Hospital records, composite exhibit 14 to Bagge aff. Interestingly, Plaintiff points to other portions of the same medical records to support the contention that Ms.

---

[2] Like the application at issue here, *Casamassina*'s application for life insurance contained a less stringent "knowledge and belief" declaration indicating his responses were "to the best of [his] knowledge and belief." *Casamassina*, at 1100.

Beavers did *not* use tobacco with the five year time frame. *See* Bagge aff. Exh. 10, bates no. CL413 and CL459; Nesmith aff. exh. 3, 451, Clark aff., exh. 2, 3rdpty 165.

In support of its contention that Ms. Beavers smoked during the relevant time frame, Life Investors also relies upon Ms. Beavers' father, Richard Beavers, testimony that she smoked until sometime between the time her son was born in 1998 and the time she moved to Florida in 2002. Richard Beavers' deposition, pp. 68-69, 71. In contrast, Plaintiff relies upon other witness testimony as proof that Ms. Beavers did not smoke during the relevant time frame: former boyfriend, Chris Connor, who testified that Ms. Beavers "smoked up until April of 1997 when she found out she was pregnant" and that he did not see her smoke after April 1997, and Mary Beavers, Ms. Beavers' mother, as well as Bruce Kusens, Ms. Beavers' former employer and business associate testified they never say her use tobacco, never smelled tobacco on her person, on her clothes, or in her residence or work areas, and never saw tobacco, cigarettes, cigarette holders, cigarette lighters, ash trays, or other tobacco products or accessories at her residence or in her possession. *See* Connor's depo, pp.33-34, Mary Beavers aff., Kusens aff.

Similarly, there is conflicting evidence concerning whether Ms. Beavers made a misrepresentation by not disclosing that she suffered from a disease or disorder of the brain or nervous system. Looking at the application, read completely and in context, question three asks Ms. Beavers whether "within the past 10 years, has any proposed insured been treated or diagnosed by a health care professional as having any disease or disorder of the brain or nervous system (such as seizures, epilepsy, multiple sclerosis, mental illness, depression, suicide attempt, eating disorder, dementia or Alzheimer's disease)?" *See* application, doc. 73-2, p.2. Defendant, relying on Ms. Beavers' visits to psychiatrist Lakdawala, who prescribed anti-depressants for

7

anxiety and difficulty sleeping, argues that Ms. Beavers knew and believed she was being treated or diagnosed with a disease or disorder of the brain or nervous system. However, even Dr. Lakdawala testified that it was reasonable for Ms. Beavers to not know and believe she was suffering from depression. Lakdawala depo, pp. 49-50. Dr. Lakdawala testified that he had no independent recollection of any office visits or conversations with Ms. Beavers. As Plaintiff posits, Florida courts recognize that medical providers often do not tell their patients of their formal diagnoses. *See Green v. Life & Health of America*, 704 So. 2d 1386, 1388 (Fla. 1998) (finding insurer could not rescind life insurance policy for insured' failure to disclose chronic renal failure, where insured's physician informed insured he had "sluggish kidneys" and insured truthfully answered his insurance application to best of his knowledge and belief). Plaintiff also posits that Dr. Lakdawala's records show that Ms. Beavers was not taking any medications and was feeling fine at the time of her application, confirming that Ms. Beavers' response that she was not suffering from a disease or disorder of the brain or nervous system. *See* Lakdawala's depo, p. 54.

In the light most favorable to the Plaintiff, Ms. Beavers' answers to the application questions may have been impacted by Daniel Cieri's explanation of the questions or application process. The failure to respond affirmatively to question three could fall within the "knowledge and belief" standard if she was unaware of a diagnosis of depression or depending on the reasonable interpretations of question three. As the *Casamassina* court noted, the Plaintiff may be inclined to "fill in the gaps" to manufacture a case to avoid summary judgment. *Casamassina, supra,* at 1101. However, this Court is precluded from passing on Ms. Beavers' credibility, her surviving relatives' memories about the facts, and conflicting medical notes, and

8

finds that the application of the "knowledge and belief" standard in this case is a jury question. *Id*. *See also Hauser v. Life General Sec. Ins. Co.*, 56 F.3d 1330, 1335 (11th Cir. 1995) (reversing district court's grant of summary judgment because determination of whether applicant responded to best of "knowledge and belief" involves a credibility determination that may only be made by jury).

   *b. materiality*

Even assuming Ms. Beavers did not answer the disputed questions on the application to the best of her knowledge and belief, summary judgment would only be appropriate if the misstatements were material to the insurer's acceptance of the risk and whether the insurer would have issued the policy had it known the true facts. *See generally Hauser v. Life General Security Ins. Co.*, 56 F.3d 1330, 1335 (11th Cir. 1995); *Mims v. Old Line Life Ins. Co. of America*, 46 F.Supp. 2d 1251, 1256 (M.D. Fla. 1999). Section 627.409, Fla. Stat., includes two different definitions of materiality: subsection (1)(a) describes an objective standard encompassing a misrepresentation that is "fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer" and (1)(b) describes a subjective standard encompassing situations where "an insurer in good faith would not have issued the policy ... would not have issued it at the same premium rate, ... in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss. Fla. Stat. §627.409. While the Plaintiff claims Life Investors violated both subsections, an insurer need only satisfy one of the standards to rescind an insurance policy based upon a misrepresentation.

Subsection (1)(a) involves "any fact of such moment that it would put a careful insurer on inquiry, which in turn might uncover facts that would lead to a rejection of the application."

9

Under subsection (1)(a) "[t]he misrepresentation need not be one that would have caused the insurer to decline to issue the policy but must only be such that a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy." The materiality of a misrepresentation may be shown as a matter of law because some misrepresentations are "so gross that any one would know they are material." *Mims, supra.* I cannot find that the alleged misrepresentations were "so gross that any one would know they are material" because I have already concluded that the record before me fails to establish that facts known or that should have been known to Ms. Beavers at the time she completed her application required her to respond differently to the tobacco use and depression questions. In other words, I cannot conclude that as a matter of law Ms. Beavers knew or should have known that her answers to these questions were false.

Subsection (1)(b) describes a subjective standard encompassing whether the insured would have issued the policy on different terms had it known the true facts. A misrepresentation is material under subsection (1)(b) if higher premiums would have been charged or lesser coverage issued had the true facts been disclosed. *Singer v. Nationwide Mut. Fire Ins. Co.*, 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987); *First Nat'l Bank Holding Co. v. Fidelity & Deposit Co.,* 885 F.Supp. 1533, 1536 (N.D. Fla. 1995). The amount of premium difference is not relevant to this determination, as the statute requires that the difference be material "to the insurer." *Fla. Stat.* §627.409(1)(b). *See also Simmons v. Coesco Life Ins. Co.*, 170 F.Supp. 2d 1215, 1225 (M.D. Fla. 2001).

As in *Mims*, Life Investors contends that Ms. Beavers' misrepresentations on the application are material because, had the true facts that she had smoked even for a short time

10

within the past five years and suffered from depression been disclosed, it would have further investigated her medical records. In *Mims*, the defendant relied upon the affidavit of its underwriter who attested that if it discovered that a proposed insured made even one misrepresentation on the application, it would trigger the need to investigate further and to obtain medical records before issuing a policy. *Id.* at 1258. Recognizing that an insurer may establish the materiality of misrepresentations through the affidavit of an underwriter, the *Mims* court noted that "generally, however, such Monday morning quarterbacking is disfavored and the materiality of misrepresentations will be a factual issue to be decided by the trier of fact, which naturally precludes summary judgment." *Mims,* at 1261 quoting *Fernandez v. Nat. Life Ins. Co.*, 402 So. 2d 1193, 1194 (Fla. 3rd DCA 1981). In *Mims*, the plaintiff offered no contradictory evidence to rebut the underwriter's statement that the "insured's past medical history and medical treatment are material ... and [the insured's] failure to disclose these visits to hospitals, in and of itself, would have caused [defendant] to decline to issue the policy." *Id.* This case differs. Although Life Investors filed an affidavit of its underwriter Lesli Nesmith stating that "Defendant would not have issued the policy at 'Preferred Elite' rates had the decedent answered 'Yes' to the question on the application as to whether she had used tobacco within the preceding five years" and "had the decedent answered 'Yes' to the question on the application pertaining to depression, it would not have issued the policy at 'Preferred Elite' rates, " Plaintiff maintains that the affidavit conflicts with Ms. Nesmith's own deposition testimony, foreclosing summary judgment.[3]

---

[3] The Plaintiff also asserts that Ms. Nesmith's single two-sentence note produced during her underwriting process fails to include any evidence to support Defendant's allegation that it relied on Ms. Beavers' depression in denying the claim. Likewise, Plaintiff asserts that Ms.

After consideration, I find that there are factual disputes precluding the granting of summary judgment as to the materiality of the alleged misrepresentations. *See generally Hauser, supra,* at 1335(where insured did not answer application to best of his knowledge and belief, the jury must decide whether the statements were material to the insurer's acceptance of the risk and whether the insurer would have issued the policy had it known the true fact, and summary judgment should be denied); *Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d 559, 567-68 (11th Cir. 1990) (when factual dispute concerning materiality of misrepresentation or non-disclosure arises, the issue is to be decided by finder of fact, not by court on motion for summary judgment); *de Guerrero v. John Hancock Mut. Life Ins. Co.,* 522 So. 2d 1032, 1033 (Fla. 3d DCA 1988) (insurer's affidavit must establish clear and uncontradicted evidence that the misrepresentation was material in that is undisputably affected the insurer's willingness to accept the risk or issue the policy on the same terms).

### c. insurance policy applied for, premiums paid, underwriting guidelines

The parties also dispute what policy Ms. Beavers applied for when she completed her application and the premiums she paid. The application on its face indicates she applied for $176,000 worth of insurance coverage with an adjustment to her premium if approved other than as requested. *See* Nesmith depo, p. 49. Life Investors claims Ms. Beavers applied for a Preferred Elite insurance policy- a product offered only to non-smokers. It is unclear from the record

---

Clark, who approved Ms. Beavers' application, had no recollection of her approval and could not testify as to what information she relied upon when she approved the application. As Plaintiff states, because there is a genuine issue of material fact as to whether Life Investors detrimentally relied upon Ms. Beavers' responses to the depression and smoking questions, summary judgment is inappropriate.

whether Ms. Beavers knew about the Preferred Elite product, how an applicant qualifies for it, or its meaning. Cieri has no recollection of Ms. Beavers, or of preparing her application. Apparently, Life Investors' claim representative, Donna Bagge, testified that she was unfamiliar with the various life insurance product options and was unsure whether Ms. Beavers' policy was issued as applied for, or not. *See* Bagge depo, pp 48-49. Plaintiff purports that Life Investors' agent, Daniel Cieri, prepared the application and Ms. Beavers merely signed the last page.

Plaintiff asserts that Ms. Beavers overpaid her premiums such that Life Investors received more than the premium needed to accept the risk it alleges it unknowingly undertook by issuing the policy to her. By Plaintiff's calculations, Life Investors overcharged Ms. Beavers because she paid a greater amount in premiums than she would have been required to pay had she not misrepresented her answers to the questions concerning tobacco use and depression. Of course, Life Investors disputes Plaintiff's calculations, asserting that Ms. Beavers was required to pay additional premiums for multiple riders to the policy she purchased. Additionally, the parties dispute whether the change in premium (in effect had Ms. Beavers not misrepresented her responses to the tobacco use and depression questions) would have been "substantially higher," hence constituting a material change.

Additionally, the Plaintiff explains that the underwriting guidelines produced by Life Investors do not address applicants who may be prescribed anti-depressants or who believe they are suffering from a disease or disorder of the brain or nervous system. The portions of the underwriting guidelines regarding depression set forth indicia for determining whether the condition may be deemed material to the risk of the Life Investors, such as whether the applicant has been hospitalized for depression or is unable to work. However, Life Investors did not make

13

any such inquiries, and in any event there are no facts in the record establishing Ms. Beavers would have met these indicia, as the record before the Court shows Ms. Beavers was never hospitalized for depression and has always been able to work. *See* Nesmith's affidavit, exhs. 4-5, Lakdawala's depo., pp. 55-56.

*Conclusion*

A jury could find that Ms. Beavers' statements and answers on her application were true and correct to the best of her knowledge and belief. A jury may or may not find that Ms. Beavers' failure to disclose her smoking and/or history of depression were material to Life Investors' acceptance of the risk or whether Life Investors would have issued the policy had it known the true facts. After consideration, I find that "conflicting inferences from the record about intent or understanding are best left for the jury and are not appropriate for summary judgment." *See Hauser, supra,* at 1335; *Casamassina, supra*, at 1101. Accordingly, it is hereby

RECOMMENDED:

1. Defendant's motion for summary judgment (doc. 73) and Defendant's amended motion for summary judgment (doc. 117) be DENIED.

2. Plaintiff's motion for summary judgment (doc. 74) be DENIED.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party

14

from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).